```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

NATOUCHA J. WHITEHURST,

                Plaintiff,              1:16-cv-01005-MAT
     -v-                                DECISION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security,

                Defendant.
_____
```

**INTRODUCTION**

Natoucha J. Whitehurst ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

**PROCEDURAL BACKGROUND**

On May 1, 2013, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of August 1, 2009, due to protein S deficiency and a blood clot disorder. Administrative Transcript ("T.") 156-58. The claims were initially denied on

July 8, 2013. T. 68-69. At Plaintiff's request, a hearing was conducted on February 20, 2015, in Buffalo, New York by administrative law judge ("ALJ") Donald T. McDougall, with Plaintiff appearing with her attorney. A vocational expert ("VE") also testified. T. 36-67. The ALJ issued an unfavorable decision on April 24, 2015. T. 19-35. Plaintiff appealed the decision to the Appeals Council ("AC"), which denied Plaintiff's request for review on November 2, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-6. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2011. T. 24.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: history of deep vein thrombosis ("DVT"), protein S deficiency, and pulmonary embolism. T. 24. The ALJ also noted Plaintiff had the medically determinable impairments of obesity, vertebrogenic disorder, and depression. However, a review of the record indicated these impairments had no more than

2

minimal impact on Plaintiff's work-related functional abilities. Accordingly, the ALJ found these additional impairments to be non-severe. T. 25.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 26.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: no stairs or ramps; no more than occasional balancing, stooping or crouching; no kneeling or crawling; no ladders, ropes, or scaffolds; no heights or dangerous moving machinery; must be able to change positions briefly for one-to-two minutes, at least every half hour; no exposure to temperature extremes; no exposure to extremes of fumes, dusts, gases, or other respiratory irritants. T. 26.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. T. 30. At step five, the ALJ relied on the VE's testimony to find that there are unskilled jobs existing in the national economy Plaintiff is able to perform, including the representative occupations of office helper and mail room clerk. T. 31. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id*.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ failed to provide "good reasons" for his

rejection of the opinions of treating physician Dr. Patrick Siaw; and (2) the ALJ's credibility analysis was not supported by substantial evidence. For the reasons discussed below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

**I. Evaluation of the Opinions of Plaintiff's Treating Physician**

Plaintiff's first argument is that the ALJ failed to properly comply with the treating physician rule when he gave limited weight to the opinions of Dr. Siaw, Plaintiff's primary care physician. For the reasons set forth below, the Court disagrees.

Under the Commissioner's regulations in place at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with the other substantial evidence of record. *See also Green-Younger*, 335 F.3d at 106. If, acting within his discretion, an ALJ assigns less than controlling weight to a treating physician's opinion because it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence,

particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" when determining what weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004)).

In this case, on September 24, 2013, Dr. Siaw completed a Residual Functional Capacity questionnaire indicating he had been treating Plaintiff for three years. T. 407. At that time, Dr. Siaw opined Plaintiff's symptoms of back pain, leg weakness, and shortness of breath would constantly interfere with her attention and concentration for simple work-related tasks. He further opined Plaintiff could: walk two city blocks before needing to rest; sit for ten minutes at a time; stand or walk for fifteen minutes at a time; sit for only one hour total during an eight hour workday; and stand or walk for only one hour total during an eight hour workday. *Id*. Dr. Siaw also stated Plaintiff would need a job that would permit her to shift positions and take unscheduled breaks about four times per day, for fifteen to twenty minutes at a time. *Id*. He opined Plaintiff was able to lift and carry up to ten pounds

6

occasionally and had no limitations doing repetitive reaching, handling, or fingering. Finally, he opined Plaintiff would need to be absent from work as a result of her impairments more than four times per month, and was incapable of working an eight hour day, five days per week on a sustained basis. T. 408.

On March 14, 2014, Dr. Siaw completed a medical examination for employability assessment, opining Plaintiff was very limited in her ability to walk, stand, sit, lift, carry, pull, push, bend, and climb stairs. He opined Plaintiff should avoid prolonged sitting, walking, and standing. He also opined Plaintiff had no limitations in mental functioning. T. 475.

On February 12, 2015, Dr. Siaw completed a second medical examination for employability assessment, opining again that Plaintiff was very limited in her ability to walk, stand, sit, lift, carry, and climb stairs. However, he updated Plaintiff's ability to push, pull, and bend from "very limited" to "no evidence of limitations." T. 507. He additionally opined Plaintiff was now moderately limited in all mental functioning, including her ability to carry out instructions, make simple decisions, and maintain basic standards of personal hygiene and grooming. *Id*.

In his decision, the ALJ permissibly assigned limited weight to the opinions of Dr. Siaw, noting that they are not supported by his treatment records. Specifically, the ALJ noted that Plaintiff's treatment records, discussed in detail earlier in his decision,

7

showed unremarkable examination findings, as well as evidence of Plaintiff's noncompliance with treatment on occasion. T. 30. For instance, on June 25, 2013, Dr. Siaw saw Plaintiff and noted Plaintiff requested a letter saying she had a blood clot disorder. Dr. Siaw noted Plaintiff had no complaints upon examination, was in no acute distress and looked well. T. 464. On September 24, 2013, Dr. Siaw saw Plaintiff again and noted she needed an evaluation for disability. Upon physical examination, Dr. Siaw noted Plaintiff was again in no acute distress and looked well. T. 463. Despite these unremarkable findings, both opinions corresponding with the examinations indicate Plaintiff had disabling conditions. *See* T. 407-08; 474-75. A treating physician's opinion is not entitled to controlling weight where it is not corroborated by the contemporaneous treatment notes and further contradicted by other medical evidence. *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009); *see also Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (finding ALJ properly declined to accord controlling weight to the opinions of plaintiff's treating physician where those opinions were internally inconsistent and inconsistent with other substantial evidence of record).

The Court also notes that all three of Dr. Siaw's opinions were form assessments in which he merely checked boxes regarding limitations, as opposed to providing a narrative description of Plaintiff's abilities. Courts in this Circuit have consistently

8

held that "lack of supporting detail and/or objective findings provides a . . . reason for affording [an] opinion less weight." *Wright v. Colvin*, No. 5:12-cv-0440, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n. 2 (2d Cir. 2004) (describing a standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens-Feliciano v. Astrue,* No. 6:11-cv-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). This factor further supports the ALJ's determination to assign limited weight to Dr. Siaw's opinions.

The ALJ further reasoned Dr. Siaw's opinions were entitled to little weight because Dr. Siaw's assessment's of Plaintiff's abilities were inconsistent with the findings of consultative examiner Dr. Hongbiao Liu. The ALJ noted that none of the symptoms Dr. Liu observed in his June 2013 examination of Plaintiff approached the magnitude of symptoms that would require the

9

disabling limitations Dr. Siaw outlined in his opinions. T. 29. An ALJ may permissibly decline to afford controlling weight to the opinion of a treating physician when that opinion is inconsistent with other medical evidence, including the opinion of other medical experts, and the claimant's reported activities of daily living. *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (citing 20 C.F.R. § 404.1527(d)(2)); *Halloran*, 362 F.3d at 32 (finding that a treating physician's opinion is not afforded controlling weight if it is inconsistent with the opinions of other medical experts)). In this case, Dr. Liu's opinion was consistent with the medical evidence of record, unlike Dr. Siaw's opinion. Indeed, Dr. Siaw's opinion was inconsistent with Plaintiff's own testimony that she was capable of lifting her twenty-three pound daughter and had no difficulty using her hands or following written or spoken instructions. T. 52, 204. Accordingly, the ALJ did not err in relying on Dr. Liu's opinion.

The Court rejects Plaintiff's contention that the ALJ should not have relied on Dr. Liu's June 2013 consultative examination because it was "stale". The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated. *See Jimmerson v. Berryhill*, No. 16-CV-442-FPG, 2017 WL 3149370, at *5 (W.D.N.Y. July 25, 2017) (citing *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014)).

Here, the record indicates that Plaintiff's condition showed no meaningful deterioration following Dr. Liu's examination. To the contrary, Dr. Siaw examined Plaintiff on March 4, 2014 and noted she looked well and that her pulmonary embolus was clinically stable. T. 455. *See Jones,* 2014 WL 256593, at *7 (consultative examiner's opinion was not stale where plaintiff failed to show a deterioration in her condition after the report).

For the foregoing reasons, the Court finds that the ALJ properly provided "good reasons" for affording limited weight to the opinions of Dr. Siaw. Accordingly, the Court finds the ALJ complied with the treating physician rule in place at the time he issued his decision and no error was committed.

**II. The ALJ's Credibility Finding was Proper**

Plaintiff's second and final argument is that the ALJ's reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms less than fully credible were not supported by substantial evidence. Specifically, Plaintiff contends the ALJ erred in his analysis of Plaintiff's failure to seek treatment and her activities of daily living. For the reasons set forth below, the Court finds no error in the ALJ's credibility finding.

An ALJ's credibility assessment is entitled to deference. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to

11

discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). The Commissioner's regulations set forth seven factors the ALJ is expected to consider in assessing credibility; however, the ALJ is not required to explicitly discuss each of the factors, so long as he sets forth the reasoning for his credibility determination, and that determination is adequately supported by the evidence. "[T]he predominant focus of a credibility analysis must be the entire case record as a whole, and ... the adjudicator [need only] show specific cause, grounded in evidence, for his or her conclusion." *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 547 (S.D.N.Y. 2004). In this case, for the reasons set forth below, the Court finds that the ALJ's credibility assessment was adequately supported by the evidence of record.

### A. The ALJ Properly Assessed Plaintiff's Activities of Daily Living

When making a credibility determination, "[a]n ALJ is entitled to take a plaintiff's activities of daily living into account..." *Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). Furthermore, an ALJ is entitled to take inconsistencies between Plaintiff's own testimony about her activities of daily living and her complaints

of total disability into consideration when making a credibility determination. *See Rusin*, 726 F. App'x at 840-41(finding claimant's activities of daily living were inconsistent with his complaints of total debilitation).

At the hearing, Plaintiff testified she has pain in her entire right leg, which is worsened by too much walking or sitting. She claimed she is able to sit for maybe half an hour before she needs to adjust or move around. T. 50-51. Plaintiff testified she doesn't really walk anywhere outside, but inside her house she is able to walk up and down the stairs three or four times. T. 49. Plaintiff also testified that she goes grocery shopping on the first of the month, attends parent-teacher conferences, and does the cooking, cleaning, dishes, and laundry for her three children, with the occasional help of her mother or her oldest daughter. T. 49-50. Plaintiff testified she is able to pick up her youngest daughter, who weighs about twenty-three pounds, though it can be a bit too much for her. T. 52.

The ALJ found that while the record supports Plaintiff's allegations of some limitations, her own testimony was not consistent with a finding of disability within the meaning of the Act. T. 29. Specifically, the ALJ noted Plaintiff remains able to perform most activities of daily living, including cooking, cleaning, laundry, and grocery shopping for herself and her three children, with occasional assistance from her mother. Furthermore,

13

Plaintiff's testimony that she is able to cook meals, do laundry, clean, do dishes, pick up her two year-old daughter, and climb the stairs in her house all comport with the ALJ's RFC finding. T. 26. The ALJ's discussion of Plaintiff's activities of daily living was consistent with her testimony and the medical evidence of record, and the ALJ did not place undue emphasis on Plaintiff's capabilities, but instead compared her testimony to the other evidence of record. Accordingly, the Court finds the ALJ properly assessed Plaintiff's activities of daily living when evaluating Plaintiff's credibility. *See Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.").

### B. The ALJ Properly Assessed Plaintiff's Failure to Seek Treatment

Plaintiff further contends the ALJ's credibility determination is flawed and unsupported by substantial evidence because he failed to explain why Plaintiff's non-compliance with medical care damaged her credibility. This argument lacks merit.

For the purposes of judging credibility, "a longitudinal medical record demonstrating [a claimant's] attempts to seek medical treatment . . . and to follow that treatment once it is

14

prescribed lends support to [a claimant's] allegations of intense and persistent pain or other symptoms..." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *7 (July 2, 1996)[1]. Conversely, a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as proscribed." *Id.* However, before drawing an adverse inference from a claimant's failure to seek or follow through with treatment, the ALJ must first consider any explanations the claimant provides, or other information in the record that may explain the failure to seek treatment. *Weed Covey v. Colvin*, 96 F.Supp.3d 14, 33 (W.D.N.Y. 2015) (internal quotation omitted).

At the hearing, Plaintiff testified Dr. Siaw had referred her to a therapist for her back pain, but she had not received any treatment because the offices he referred her to "doesn't do it." T. 45. A treatment note from Dr. Siaw's office dated November 13, 2014 stated Plaintiff was "noncompliant to medical care -- presently not taking her Xarelto -- last dose was 3 days ago" and that all of Plaintiff's prescriptions had run out. T. 449.

In his decision, the ALJ discussed both Plaintiff's testimony that she was referred to physical therapy but had not received

---

[1] SSR 96-7p was superseded by SSR 16-3p in 2017, which eliminated the use of the term "credibility" from the sub-regulatory policy. However, SSR 96-7p was in effect at the time the ALJ wrote his decision in 2015, thus making its application in this case appropriate.

treatment (T. 27), and the November 2014 treatment note stating Plaintiff was noncompliant with her medical care (T. 29). Later, in his credibility assessment, the ALJ noted that Plaintiff's noncompliance with her medical care demonstrated a possible unwillingness to do what is necessary to improve her condition. He further noted that the noncompliance may also be an indication that Plaintiff's symptoms are not as severe as she alleges. T. 29.

Here, the ALJ considered the explanations offered by Plaintiff regarding her failure to seek treatment and lack of compliance, but ultimately concluded that her actions showed an unwillingness to actively try to improve her condition. The Court notes that Plaintiff did not proffer any explanation for why she allowed her prescriptions to run out, thus resulting in her not taking her medication. Moreover, the ALJ also appropriately explained the factors he took into account when assessing Plaintiff's credibility and how he arrived at his determination. *See Price v. Colvin*, No. 1:14-CV-00756(MAT), 2017 WL 2572311 at *5 (W.D.N.Y. June 14, 2017) (internal citation omitted) ("a claimant's failure to adhere to prescribed treatment, as well as gaps in treatment, are relevant considerations in the assessment of credibility"). Accordingly, the Court finds the ALJ provided adequate explanations as to why he found Plaintiff's noncompliance with medical care negatively impacted her credibility.

For the reasons set forth above, the Court finds no error in the ALJ's finding that Plaintiff was less than fully credible. The Court accordingly finds that remand is not warranted on this basis.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 14) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 17) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    August 14, 2018
          Rochester, New York